**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| TERRY TRAYLOR, | : | |
| | : | Civil Action No. 05-5986 (JAP) |
| Petitioner, | : | |
| | : | |
| v. | : | **O P I N I O N** |
| | : | |
| PETER C. HARVEY, et al., | : | |
| | : | |
| Respondents. | : | |

**APPEARANCES:**

Terry Traylor, Pro Se
Special Treatment Unit
30-35 Hackensack Avenue
P.O. Box 699
Kearney, NJ 07032

David L. DaCosta
Deputy Attorney General
Office of the NJ Attorney General
25 Market Street, P.O. Box 112
Trenton, NJ 08625
Attorney for Respondents

**PISANO, District Judge**

Petitioner, Terry Traylor, filed the within petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254. Respondents filed an Answer, and Petitioner submitted a Reply to the Answer. The Court has considered all submissions. For the reasons set forth below, the Petition will be denied.

**BACKGROUND**

The facts of this case were recounted below and this Court, affording the state court's factual determinations the appropriate deference, see 28 U.S.C. § 2254(e)(1), will simply reproduce the Superior Court of New Jersey, Appellate Division's ("Appellate Division") factual recitation:

> Defendant is a forty-eight year old man who has been twice convicted of sexually violent crimes as defined by the SVPA.[1] The first offense occurred on July 2, 1976. T.J.T.,[2] then twenty-one, sexually assaulted a six year old girl in his neighborhood. He approached the child in a hallway, placed his hand over her mouth and carried her into the bathroom of an abandoned apartment. He took off her clothing and inserted two fingers and then his penis into her vagina. When apprehended defendant claimed to have suffered an alcoholic blackout during the incident. He pleaded guilty to carnal abuse of the child pursuant to a plea agreement.
>
> Prior to sentencing, T.J.T. was diagnosed at the Adult Diagnostic and Treatment Center (ADTC) with "an impulsive personality disorder that is associated with alcohol intake." Since there were no findings of a reptetitive compulsive type of abhorrent sexual behavior, T.J.T. did not fall under the purview of the New Jersey Sex Offender Act and was sentenced pursuant to the plea agreement to an indeterminate prison term not to exceed five years.
>
> Following his release, defendant was arrested on ten separate occasions over the next fifteen years, resulting in four indictments, three indictable offenses, two disorderly persons convictions and a violation of probation. None of the charges involved sexual offenses. They included possession of burglary

---

[1] "SVPA" refers to the New Jersey Sexually Violent Predator Act, N.J.S.A. 30:4-27.24, et seq.

[2] "T.J.T." are Petitioner's initials.

tools, theft by deception, receiving stolen property and possession of a weapon for an unlawful purpose.

In 1993, T.J.T. committed the sexual offense which forms the predicate for the State's SVPA application. Responding to a report of an assault in the early hours of February 4, 1992, Newark police officers met a thirty-seven year old woman who said she had escaped from her apartment after T.J.T. had beaten and raped her. The officers found the apartment covered in blood. T.J.T. was asleep and naked from the waist down. When they woke him to place him under arrest, T.J.T. was drunk and uncooperative.

The victim related a horrifying story. After T.J.T. helped fix her apartment door, she drank some vodka with him. He then demanded sex and became violent and angry when she refused. He took a pair of scissors and stabbed her in the neck and back. He hit her in the head with a bat, slapped her in the face and threatened to kill her. Every time the victim would scream, T.J.T. cut her lip with a razor. He smothered her with a pillow, forced her to commit fellatio and repeatedly raped her. The victim was admitted to the hospital with two stab wounds, seven razor slashes, a punctured lung from a screwdriver and injuries to her head and shoulder.

T.J.T. was indicted for attempted murder, aggravated assault, aggravated sexual assault, terroristic threats, unlawful possession of a weapon and possession of a weapon for an unlawful purpose. On September 30, 1992, he entered a retraxit plea to second-degree aggravated assault, two counts of first-degree aggravated assault and third-degree terroristic threats. When taken to the A[dult] D[iagnostic and] T[reatment] C[enter] for evaluation of his eligibility for sentencing under the Sex Offender Act, T.J.T. refused to participate. According to the report of Dr. Mark Frank, T.J.T. was "only marginally more cooperative" the second time he was transported. T.J.T. admitted to physically assaulting the victim but denied any sexual assault in spite of his guilty plea. Dr. Frank's report noted that, "for the most part, [T.J.T.] sat with his face turned away from the examiner. His demeanor can best be described as hostile." T.J.T. refused to answer any questions about his background or sexual history. Dr. Frank concluded:

>  [that Petitioner's refusal to provide details made it difficult to diagnose him, and found that preponderance of the evidence necessary for finding sexual compulsion was lacking, and Petitioner should not be sentenced under the Sex Offender Act] . . . .
>
>  On October 26, 1993, T.J.T. was sentenced to an aggregate sentence of fifteen years with a five year period of parole ineligibility.
>
>  On January 15, 2002, two weeks before T.J.T. was to max out on his sentence, the Attorney General filed the petition for commitment of T.J.T. pursuant to the SVPA.  Attached were clinical certificates of two psychiatrists . . . .  An order was signed on January 23, 2002, temporarily committing T.J.T. to the Special Offender Unit pending a final commitment hearing.

(In the Matter of the Civil Commitment of T.J.T., A-1335-02T2 (July 12, 2004), pp. 1-5; Affidavit of David DaCosta ("DaCosta Affidavit"), Exhibit 1).

At the final commitment hearing, the sole witness was Dr. Stanley Kern, who testified that, based on a number of factors, Petitioner's potential to commit another sexually violent act within a short time was extremely strong.  (Id., pp. 6-7).  The hearing judge entered judgment committing Petitioner to the Special Offender Unit and scheduled a review hearing.  (Id. at p. 8).

The Appellate Division affirmed the judge's findings and decision to commit on July 12, 2004.  Petitioner petitioned for certification to the New Jersey Supreme Court for review of the Appellate Division decision.  The New Jersey Supreme Court denied certification on March 1, 2005.

4

The instant petition was filed on December 27, 2005. On January 17, 2006, Petitioner was advised of his rights pursuant to <u>Mason v. Meyers</u>, 208 F.3d 414 (3d Cir. 2000). On April 28, 2006, Respondents filed an Answer and the relevant state court record. On June 2, 2006, Petitioner filed a Reply to the Answer.

## DISCUSSION

**A.   Petitioner's Claims.**

Petitioner asserts the following four arguments for habeas relief:

1. Petitioner was denied effective assistance of counsel- Counsel failed to investigate, did not oppose state petition, waived right to probable cause hearing, and failed to call expert witnesses on his behalf.

2. Petitioner was denied due process- Petitioner was denied the right to a probable cause hearing and to appeal an administrative decision.

3. Petitioner was confined in violation of his constitutional rights- Petitioner was interviewed and transferred to mental institution without benefit of counsel or hearing.

4. Petitioner was denied equal protection- Petitioner was not advised of the consequences of entering his plea and that plea would lead to involuntary commitment.

<u>See</u> Petition for Writ of Habeas Corpus, ¶ 12.

Petitioner has raised the instant claims before the New Jersey state courts. To the extent that the claims have not been presented, this Court will excuse the exhaustion requirement, as the claims are not meritorious. <u>See</u> 28 U.S.C. § 2254(b)(2); <u>Duncan v. Walker</u>, 533 U.S. 167, 203 n.6 (2001)(noting that under

5

§ 2254(b)(2), a district court may deny non-exhausted, non-meritorious claims); Lewis v. Pinchak, 348 F.3d 355, 357 (3d Cir. 2003)(same).

**B.   Standards Governing Petitioner's Claims.**

Section 2254 of Title 28, United States Code, provides that the district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

Under 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), federal courts in habeas corpus cases must give considerable deference to determinations of the state trial and appellate courts.  See Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied 534 U.S. 919 (2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996)(citing Parke v. Raley, 506 U.S. 20, 36 (1992)).

Section 2254(d) sets the standard for granting or denying a writ of habeas corpus.  The statute reads as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

>     determined by the Supreme Court of the United
>     States; or
>
>     (2) resulted in a decision that was based on
>     an unreasonable determination of the facts in
>     light of the evidence presented in the State
>     court proceeding.

28 U.S.C. § 2254(d).

In <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2000), the Supreme Court explained the application of § 2254(d)(1). The Court analyzed subsection 1 as two clauses: the "contrary to" clause and the "unreasonable application" clause. The Court held that under the "contrary to" clause, "a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." <u>Id.</u> A federal court may grant the writ under the "unreasonable application" clause, if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u> at 413. Habeas relief may not be granted under the "unreasonable application" clause unless a state court's application of clearly established federal law was objectively unreasonable; an incorrect application of federal law alone is not sufficient to warrant habeas relief. <u>See</u> <u>id.</u> at 411; <u>see</u> <u>also</u> <u>Werts v. Vaughn</u>, 228 F.3d 178, 197 (3d Cir. 2000),

7

cert. denied, 532 U.S. 980 (2001); Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 891 (3d Cir.), cert. denied, Matteo v. Brennan, 528 U.S. 824 (1999).  Thus, the federal court must decide whether the state court's application of federal law, when evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent.  See Werts, 228 F.3d at 197; see also Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005).

   With regard to 28 U.S.C. § 2254(d)(2), a federal court must confine its examination to evidence in the record.  See Abu-Jamal v. Horn, 2001 WL 1609690, at *12 (E.D. Pa. December 18, 2001).  In addition, the state court record should be reviewed to assess the reasonableness of the state court's factual determinations.  See id.  Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court."  Id.; see also 28 U.S.C. § 2254(e)(1).  The Court of Appeals for the Third Circuit has ruled that this presumption of correctness can be overcome only by clear and convincing evidence.  See Duncan v. Morton, 256 F.3d 189, 196 (3d Cir. 2001)(citing 28 U.S.C. § 2254(e)(1)).  "A finding that is well-supported and subject to the presumption of correctness is not unreasonable."  Abu-Jamal, 2001 WL 1609690 at *12 (citing Duncan, 156 F.3d at 198).

Furthermore, federal habeas courts ordinarily refrain from revisiting credibility determinations as "it would be wholly inappropriate for a federal court to repastinate soil already thoroughly plowed and delve into the veracity of the witnesses on habeas review." Sanna v. Dipaolo, 265 F.3d 1, 10 (1st Cir. 2001). A habeas petitioner therefore "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

C.   **Petitioner's Ineffective Assistance of Counsel Claim.**

Petitioner argues that his counsel should have investigated his status as a sexually violent predator, should have opposed the state petition, should not have waived the right to a probable cause hearing, and should have called expert witnesses on his behalf. He also states that counsel did not consult with

him. Petitioner's claims were examined by the Appellate Division on direct appeal of his commitment. The Appellate Division found that his arguments were "without sufficient merit to warrant discussion in a written opinion." (DaCosta Affidavit, Ex. 1, p. 16).

The "clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), is the standard for ineffective assistance of counsel as enunciated in Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, a petitioner seeking to prove a Sixth Amendment violation must demonstrate that his counsel's performance fell below an objective standard of reasonableness, assessing the facts of the case at the time of counsel' s conduct. Id. at 688-89; Jacobs v. Horn, 395 F.3d 92, 102 (3d Cir. 2005); Keller v. Larkins, 251 F.3d 408, 418 (3d Cir.), cert. denied, 534 U.S. 973 (2001). Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 688. "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." Id. The Supreme Court further explained:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act

> or omission of counsel was unreasonable.  A fair
> assessment of attorney performance requires that every
> effort be made to eliminate the distorting effects of
> hindsight, to reconstruct the circumstances of
> counsel's challenged conduct, and to evaluate the
> conduct from counsel's perspective at the time.
> Because of the difficulties inherent in making the
> evaluation, a court must indulge a strong presumption
> that counsel's conduct falls within the wide range of
> reasonable professional assistance; that is, the
> defendant must overcome the presumption that, under the
> circumstances, the challenged action "might be
> considered sound trial strategy."

Id. at 689 (citations omitted); see also Virgin Islands v. Wheatherwax, 77 F.3d 1425, 1431 (3d Cir.), cert. denied, 519 U.S. 1020 (1996).

If able to demonstrate deficient performance by counsel, petitioner must also show that counsel's substandard performance actually prejudiced his defense.  Strickland, 466 U.S. at 687. Prejudice is shown if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694.  The reviewing court must evaluate the effect of any errors in light of the totality of the evidence. Id. at 695-96.  Thus, the petitioner must establish both deficient performance and resulting prejudice in order to state an ineffective assistance of counsel claim.  Id. at 697.  See also Jacobs, 395 F.3d at 102; Keller, 251 F.3d at 418.

In this case, a review of the record provided reveals that Petitioner did not receive ineffective assistance of counsel. First, counsel challenged the State's petition for commitment at the final hearing. Petitioner's counsel cross-examined the sole witness, Dr. Kern, effectively, eliciting that the doctor had never found a subject who failed to meet the SVPA standard for commitment, that Petitioner had a "moderate risk" of re-offending, and that he had not discussed certain factors with Petitioner. (DaCosta Affidavit, Ex. 1, p.7). Despite counsel's efforts, the judge found that there was "clear and convincing" evidence to find Petitioner was a sexually violent predator. (DaCosta Affidavit, Ex. 1, p. 8). Second, Petitioner does not divulge what further investigation by counsel would have revealed that would have changed the outcome of either his temporary commitment or his final hearing. Other than to contend that he was "examined" but not "treated," Petitioner does not challenge the documentation relied upon by the judge to temporarily commit him pending his final hearing. He does not challenge the witness's testimony at his final hearing regarding his psychiatric evaluations and conditions.

Petitioner's allegations that counsel should have investigated his status as a sexually violent predator and should not have waived a probable cause hearing, even if they were to satisfy the "deficient performance" prong of Strickland, which

12

this Court does not find, do not satisfy the "prejudice" prong of <u>Strickland</u>, as Petitioner does not demonstrate how these actions, at the temporary commitment stage, would have changed the outcome of his final commitment hearing. From the record provided, it appears that Dr. Kern's testimony was enough to demonstrate clearly and convincingly, that Petitioner commitment was lawful.

Moreover, Petitioner has not established a constitutional violation. Nor has he shown, as required by 28 U.S.C. § 2254(d), that the actions of the state courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Accordingly, this ground for a writ of habeas corpus will be denied.

**D.**     **<u>Petitioner's Claim Regarding Probable Cause Hearing and Transfer to Mental Institution.</u>**

In Ground 2, Petitioner argues that he was denied due process because he did not receive a probable cause hearing prior to the temporary commitment order, and was denied the right to appeal the temporary commitment order. Petitioner cites <u>N.J.S.A.</u> 30:4-27.28 and <u>In re Commitment of M.G.</u>, 331 N.J. Super. 365 (App. Div. 2000) in support of his arguments. (DaCosta Affidavit, Exhibit 2). In Ground 3, Petitioner argues that his

transfer to the "mental institution, without the benefit of counsel or a court hearing," violated his rights to due process and equal protection.

Petitioner argued these issues on appeal challenging his commitment order, and the Appellate Division found that his arguments were "without sufficient merit to warrant discussion in a written opinion." (DaCosta Affidavit, Ex. 1, p.16).

The record reveals that on January 15, 2002, two weeks prior to Petitioner's max out date on his sentence, the Attorney General filed a petition for commitment pursuant to the SVPA. Attached to the petition were two clinical certificates of psychiatrists who had examined Petitioner. On January 23, 2002, an order was signed, temporarily committing Petitioner until a final commitment hearing. (DaCosta Affidavit, Ex. 1, p. 5).

Involuntary commitment proceedings may be initiated by the Attorney General "by submission to the court of two clinical certificates for a sexually violent predator, at least one of which is prepared by a psychiatrist." N.J.S.A. 30:4-27.28(c). "Upon receiving these documents, the court shall immediately review them in order to determine whether there is probable cause to believe that the person is a sexually violent predator." N.J.S.A. 30:4-27.28(f). If the court finds that there is probable cause to believe the person is a sexually violent predator, it shall issue an order authorizing temporary

14

commitment and setting a date for a final hearing within 20 days. N.J.S.A. 30:4-27.28(g); N.J.S.A. 30:4-27.29(a).

New Jersey courts have explained that notice prior to commitment "is necessary to establish there is a *prima facie* basis to warrant commitment." In re Commitment of M.G., 331 N.J. Super. at 383 (citing Gerstein v. Pugh, 420 U.S. 103 (1975)). However, the "notice and right of an alleged SVP to challenge the documents submitted to the court need not involve testimony nor resolve crucial evidentiary or credibility questions. These issues can be addressed at the twenty-day hearing following the commitment." Id. The New Jersey court continued:

> The probable cause hearing, which we conclude satisfies due process requirements, shall be limited to an inquiry as to whether the documentation provided to the judge satisfies the statutory requirements for commitment. We recognize that in many cases there will be no preliminary challenge, and any appropriate challenge will be reserved until the twenty-day post-commitment hearing.

Id. at 383-84.

New Jersey statute also provides that when temporary commitment is justified, the order setting the date for a final hearing shall also "authorize temporary commitment to a secure facility designated for the custody, care and treatment of sexually violent predators pending the final hearing. In no event shall the person be released from confinement prior to the final hearing." N.J.S.A. 30:4-27.28(g).

In the case at issue, it is clear from the record that the statutory requirements for commitment were met. Petitioner does not demonstrate a lack of probable cause for his temporary commitment. The Attorney General presented two clinical certificates, which the judge reviewed and found probable cause to temporarily commit Petitioner. Petitioner was properly transferred to a secure facility prior to the final hearing. Petitioner was afforded a final hearing within 20 days of the commitment order. He appealed the decision ordering him committed after the final hearing. Thus, as the New Jersey courts found, it appears that the procedures employed were proper under New Jersey law.

Additionally, Petitioner has not shown a constitutional violation. Under Federal law, the procedures utilized by New Jersey in identifying and detaining sexually violent predators have withstood constitutional challenges. See Kansas v. Hendricks, 521 U.S. 346 (1997)(finding that the Kansas sexually violent predator statutes, similar to New Jersey's statute, did not violate due process, ex post facto prohibition, or double jeopardy prohibition); see also Greenfield v. New Jersey Dep't of Corrections, 382 N.J. Super. 254, 263 (App. Div. 2006)(finding that the SVPA "provides an affected individual the opportunity to be heard 'at a meaningful time in a meaningful way.' The Constitution requires no more."); In re Commitment of W.Z., 339

N.J. Super. 549 (App. Div. 2001)(upholding SVPA against constitutional challenges).

Petitioner has not shown, as required by 28 U.S.C. § 2254(d), that the actions of the state courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Accordingly, these grounds for a writ of habeas corpus will be denied.

### E.   Petitioner's Claim Regarding Plea Agreement

In Ground 4, Petitioner argues that when he entered into his plea agreement in 1992 for the underlying offense, he was not advised that a consequence of the plea was that he could be involuntarily civilly committed at the end of his prison sentence. Petitioner argued this issue on appeal challenging his commitment order, and the Appellate Division found that his argument was "without sufficient merit to warrant discussion in a written opinion." (DaCosta Affidavit, Ex. 1, p.16).

The Court notes that the Sexually Violent Predator Act was approved in 1998, to become effective in 1999, well after Petitioner entered into his plea agreement. See N.J.S.A. 30:4-27.24. While New Jersey currently mandates that a criminal defendant entering a plea be informed of the consequences of the

17

plea and the possibility that he may be committed under the SVPA, see State v. Bellamy, 178 N.J. 127 (2003), Petitioner's plea occurred in 1992; thus, it would have been impossible for the Court to so inform him, as the SVPA was not yet in effect.[3]

Further, the Court notes that under Federal law, due process requires that guilty pleas be entered intelligently and voluntarily. See Boykin v. Alabama, 395 U.S. 238, 242 (1969). A plea does not qualify as intelligent "unless a criminal defendant first receives 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'" Bousley v. United States, 523 U.S. 614, 618 (1998) (quoting Smith v. O'Grady, 312 U.S. 329, 334 (1941)). The Court of Appeals for the Third Circuit has held that the only direct consequences relevant to evaluating the voluntariness of a guilty plea are the maximum prison term and fine for the offense charged. See Parry v. Rosemeyer, 64 F.3d 110, 114 (3d Cir. 1995), cert. denied, 516 U.S. 1058 (1996), superseded by statute on other grounds as stated in Dickerson v. Vaughn, 90 F.3d 87 (3d Cir. 1996).

In this case, Petitioner challenges his guilty plea only to the extent that he became eligible for commitment under the SVPA. Thus, Petitioner does not state a constitutional violation or

---

[3] The Court notes that in New Jersey, challenges to guilty pleas may be entertained in state court by filing a motion to withdraw the guilty plea. See N.J. Ct. R. 3:21-1.

18

otherwise demonstrate that he is entitled to habeas relief on this claim.[4]

## CONCLUSION

For the foregoing reasons, the Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254 is denied.  The Court further finds that no certificate of appealability will issue because Petitioner has not made a substantial showing of the denial of a constitutional right, as required by 28 U.S.C. § 2253.

An appropriate Order accompanies this Opinion.

                                  /s/Joel A. Pisano
                                  JOEL A. PISANO
                                  United States District Judge

Dated:  August 7, 2006

---

[4] If Petitioner is asserting an ex post facto challenge to the SVPA, the Court notes that the United States Supreme Court has upheld against ex post facto challenges the Kansas Sexually Violent Predator Act, a statute substantially similar to the New Jersey Sexually Violent Predator Act.  See Kansas v. Hendricks, 521 U.S. 346 (1997); see also Seling v. Young, 531 U.S. 250 (2001); In re Commitment of J.H.M., 367 N.J. Super. 599 (App. Div.) (New Jersey Sexually Violent Predator Act does not violate Ex Post Facto Clause), certif. denied, 179 N.J. 312 (2003), disapproved of on other grounds in In re Commitment of A.E.F., 377 N.J. Super. 473 (App. Div. 2005).  Accordingly, the Petitioner's claim would fail.

19